## EWING *vs.* PECK.

1. A judgment quashing an execution, on the ground of the defendant's discharge in bankruptcy, although the court refuses to order satisfaction or discharge of the original judgment to be entered, or a perpetual stay of execution, relates back to the original judgment; and its effect, so far as respects the rights of the parties to that judgment, is to vacate all process issued for its satisfaction.

2. Money paid under a *pluries fi. fa.*, pending a motion to quash a previous execution on the ground of the defendant's discharge in bankruptcy, may be recovered in assumpsit after the rendition of a judgment quashing the writ, unless the party receiving it can show some equity, arising out of the same transaction, which justifies its retention.

3. If the money was voluntarily paid after the return day of the execution, and under no mistake by the party paying it as to his rights, he cannot recover it; but it does not follow that the payment was voluntary, merely because it was made after the return day of the execution, when there was a subsisting levy on the defendant's land: whether it was voluntary or not, under such circumstances, is a question for the determination of the jury.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. TURNER REAVIS.

ASSUMPSIT on the common money counts, by Samuel B. Ewing against Elijah W. Peck, to recover money paid by the plaintiff under a *pluries* execution against himself, which was issued on a judgment in favor of Peck & Clark. The money was paid to the sheriff one day after the return day of the execution, which had been levied on said Ewing's land; and at that time there was a motion pending to quash a previous execution on the same judgment, on account of the defendant's discharge in bankruptcy, which motion was afterwards granted, but the court refused to order satisfaction of the judgment or a perpetual stay of execution.

On these facts, the court charged the jury, in effect, that they should find for the defendant; and this charge is now assigned for error.

J. L. MARTIN, for appellant:

1. The judgment quashing the *alias fi. fa.*, based (as it was) upon the ground that the judgment on which the *fi. fa.* issued was discharged by the certificate of discharge in bankruptcy,

vacated and annulled the *pluries fi. fa.*, and rendered it no protection to the defendant in retaining the money collected under it. No direct proceeding was necessary to quash the *pluries* execution, which was but a continuation of the first: if the first execution was vacated, or declared void, for want of vitality in the judgment on which it was founded, a subsequent one was rendered void by the same proceeding.

2. That assumpsit is the proper action to recover back the money paid under the execution, see the following authorities: Williams v. Simmons, 22 Ala. 425; Roebuck v. Dupuy, 7 *ib.* 484; Burdine v. Roper, *ib.* 466; Ewing v. Peck & Clark, 17 *ib.* 339.

3. It cannot be successfully contended, that the payment by Ewing was voluntary. In the first place, it was paid to the sheriff in whose hands the execution was at the time, and who had under his control, in virtue thereof, property of Ewing to a sufficient amount to satisfy it. As well might it be said, that a criminal, condemned to death, voluntarily submitted to the sheriff's halter, and was thereby a *felo de se*, as that a payment made under such circumstances was voluntary. Whether the money was paid before or after the return day of the execution, can make no difference in determining its character. The payment was made to the sheriff of a county remote from that in which the judgment was rendered, and to which the execution was returnable, and it was made only one day after the return day of the execution. The charge, under such circumstances, amounts to this: That the jury cannot doubt, that Ewing knew the precise day on which the court to which the execution was returnable commenced; that he knew the sheriff had no power to sell his property levied on under the execution in his hands—that it was *functus officio;* and that Ewing, from some unknown motive, under no restraint whatever, but of his own free will, and understanding all the facts, paid the amount of the execution to the sheriff as the authorized agent of Peck & Clark. As to voluntary payment, see Evans v. Governor, 18 Ala. 659; Rutherford v. McIvor, 21 *ib.* 750.

E. W. PECK, *pro se, contra :*

1. The judgment on which the *pluries* execution was issued

was a valid judgment : it had not been reversed, vacated, or set aside ; and consequently the said execution was lawfully issued.—Cogburn v. Spence, 15 Ala. 549.

2. The money sought to be recovered in this case was either paid under the said execution, or it was not. If paid on the execution, it cannot be recovered back, because paid on a valid execution ; if not paid on the execution, then it was a voluntary payment, in satisfaction of a lawful judgment, which, *ex æquo et bono*, the appellant may retain—Jones v. Watkins, 1 Stew. 81; University v. Keller, 1 Ala. 406; Dupuy v. Roebuck, 7 *ib.* 484.

CHILTON, C. J.—Ewing insisted that a judgment which Peck & Clark had obtained against him in the Tuskaloosa Circuit Court was discharged in consequence of his certificate of discharge in bankruptcy, and moved in said Circuit Court to quash an *alias* execution of *fieri facias* which had issued thereon, and had been levied on his real estate, as well as to enter the discharge of the judgment, and for a perpetual stay of execution.

The court, upon the trial of the motion, refused to grant it, and gave judgment against Ewing for the costs. This judgment was reversed by this court, the case sent back, the motion re-tried, and judgment entered quashing the execution ; but the court refused to enter the judgment as discharged by the certificate, or perpetually to stay execution.

Pending the motion, and before the judgment quashing the *alias fi. fa.* was rendered, Peck & Clark sued out a *pluries fi. fa.*, which was placed in the hands of the sheriff of Mobile, and by him levied on the real estate of Ewing, who paid the money to the sheriff on the day after the commencement of the term of the court to which said *pluries* execution was returnable. Mr. Peck then wrote to Mr. Adams of Mobile, requesting him, if he had not previously sent the money which he had received from the sheriff of Mobile, collected on an execution of Peck & Clark against Samuel B. Ewing, to pay it to Charles Hopkins of Mobile, and it was accordingly so paid. To recover this money, so collected and paid, the appellant brought this action. The court charged the jury, that if they believed the above facts, they should find for the de-

fendant. This charge is assigned for error, and presents the only point for our revision.

We are of opinion, that the effect of the judgment quashing the execution, upon the ground of Ewing's discharge in bankruptcy, was to vacate all process issued for its satisfaction. The plaintiffs in that judgment were tendered an opportunity of controverting the discharge, if it had been fraudulently obtained; but failing to do so, they are concluded by it, until it is reversed, or in some way annulled. The discharge having thus been judicially ascertained, and virtually enrolled as a part of this case, although the court refused to order the judgment to be satisfied or discharged, or a perpetual stay of execution, yet the discharge in bankruptcy relates back to the judgment, and operating a discharge of that, discharges or vacates all process dependent on it, so far as respects the rights of the parties to such judgment. We say nothing as to the rights of purchasers not parties or privies, who may have acquired property at a sale made under the process before the judgment quashing the execution.

Under this view of the case, although when the money was collected by the sheriff of Mobile, the execution in virtue of which it was collected was subsisting, yet, being vacated by matter posterior, this action for money had and received lies to recover it back, unless the party receiving it can show some equity, arising out of the same transaction, which justifies its retention.—5 S. & P. 119; 7 Ala. 848 ; 9 ib. 803; 11 ib. 999, and cases there cited ; see, also, 15 Mass. 207; 10 Ala. 313 ; 22 ib. 425.

But it may be said, the judgment, although discharged by the bankrupt's certificate, constituted a good moral consideration to support a payment, and if the plaintiff in this action made a voluntary payment to the sheriff, after the return day of the execution, and when the sheriff, as such, had no authority to receive it, he cannot recover it back.

It is certainly true, that if the payment was voluntary, and made under no mistake as to the rights of the party making it, he cannot afterwards recover it back. But it does not follow that the payment was voluntary, merely because it was made when the sheriff's authority to enforce the collection had ceased. There was then a subsisting levy upon Ewing's

land, and he was engaged, by the pendency of his motion in the Circuit Court, in an attempt to rid himself of the process. On the other hand, the plaintiffs in the judgment were in pursuit of their debt by legal process, unwilling to await the action of the court upon the motion to quash, and they treat the money as though it had been collected under the execution, adopting the sheriff's act in receiving it. Now we will not say, that the payment, under these circumstances, may not have been voluntarily made; but whether it was or not, was a question for the jury, and one which the court could not properly determine,—a question of intent, as being the free act of the party, or as being superinduced by the process or levy. If the payment was made to avoid the levy, or if Ewing, to avoid the sale of his land, had promised the sheriff to pay the money, and in fulfilment of the promise had paid it, there would be no propriety in saying that such payment was voluntary. True, in one sense, it is a willing payment, but the will is influenced or impelled by the circumstances, growing out of the proceedings to enforce the collection of the judgment.

Judgment reversed, and cause remanded.